SHAMDU CALEB NALLS                          *        IN THE
1723 Reese Road
Westminister, Maryland 21157                *        UNITED STATES

and                                         *        DISTRICT COURT

DAYANERIS DMEZA                             *        FOR THE DISTRICT
1723 Reese Road
Westminister, Maryland 21157                *        OF MARYLAND

and                                         *

SHANERIS NALLS                              *        Case No.:
1723 Reese Road
Westminister, Maryland 21157                *

and                                         *

SHAMDU VERABY NALLS                  *
8830 Margate Court
Pikesville, Maryland 21208                   *

and                                         *

NEHEMIAH LEMBERT                            *
239 Poplar Street
Hanover, Pennsylvania 15712           *

    *Plaintiffs*                         *

    v.                                   *

BALTIMORE COUNTY, MARYLAND         *
Serve: James R. Benjamin, Jr., Esq.
    County Attorney                   *
    Historic Courthouse
    100 Washington Avenue             *
    Towson, Maryland 21204
                                            *
and                                         *

OFFICER KYLE AMRHEIN
*Individually and in his Official Capacity*  *
*as a Baltimore County Police Officer*
624 Windsor Mill Road                       *

Gwynn Oak, Maryland 21207

                  \*

and

                  \*

OFFICER WILLIAM HALSTEAD
*Individually and in his Official Capacity*   \*
*as a Baltimore County Police Officer*
624 Windsor Mill Road               \*
Gwynn Oak, Maryland 21207

                  \*

and

                  \*

OFFICER PRISCILLA HARSHADAVID
*Individually and in his Official Capacity*   \*
*as a Baltimore County Police Officer*
624 Windsor Mill Road               \*
Gwynn Oak, Maryland 21207

                  \*

and

                  \*

OFFICER ERIK LEGGE
*Individually and in his Official Capacity*   \*
*as a Baltimore County Police Officer*
624 Windsor Mill Road               \*
Gwynn Oak, Maryland 21207

                  \*

and

                  \*

OFFICER DAVID LEHNERT
*Individually and in his Official Capacity*   \*
*as a Baltimore County Police Officer*
624 Windsor Mill Road               \*
Gwynn Oak, Maryland 21207

                  \*

and

                  \*

OFFICER PAUL SCHULMAN
*Individually and in his Official Capacity*   \*
*as a Baltimore County Police Officer*
624 Windsor Mill Road               \*
Gwynn Oak, Maryland 21207

                  \*

and

                  \*

OFFICER RACHAEL STEIGEN
*Individually and in his Official Capacity*   \*
*as a Baltimore County Police Officer*
624 Windsor Mill Road               \*

Gwynn Oak, Maryland 21207

                                           *

and

                                           *

OFFICER EVAN VICARINI
*Individually and in his Official Capacity*     *
*as a Baltimore County Police Officer*
624 Windsor Mill Road                   *
Gwynn Oak, Maryland 21207

                                           *

and

                                           *

OFFICER ANTHONY VITACCO
*Individually and in his Official Capacity*     *
*as a Baltimore County Police Officer*
624 Windsor Mill Road                   *
Gwynn Oak, Maryland 21207

                                           *

      *Defendants.*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** Plaintiffs Shamdu Caleb Nalls, Dayaneris Dmeza, Shaneris Nalls, Shamdu Veraby Nalls, and Nehemiah Lembert by and through their undersigned counsel, and complaining of the acts of the Defendants alleges and states as follows:

## PARTIES

1.     Plaintiff Shamdu Caleb Nalls is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County, Maryland.

2.     Plaintiff Dayaneris Dmeza is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County, Maryland.

3.     Plaintiff Shaneris Nalls is an adult resident of Baltimore County, Maryland. At the time of the occurrence complained of herein, Plaintiff Shaneris Nalls was a minor.

4.     Plaintiff Shamdu Veraby Nalls is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County, Maryland.

5.      Plaintiff Nehemiah Lembert is, and was at all times relevant to the occurrence complained of herein, an adult resident of Baltimore County, Maryland.

6.      Defendant Baltimore County, Maryland is a municipal corporation organized under the provisions of Art. XI-A of the Maryland Constitution. At all times mentioned, Baltimore County employed the individual Defendants Officer Kyle Amrhein, Officer Jonathan Carlone, Officer William Halstead, Officer Priscilla Harshadavid, Officer Erik Legge, Officer David Lehnert, Officer Paul Schulman, Officer Rachael Steigen, Officer Evan Vicarini, and Officer Anthony Vitacco as police officers.

7.      Defendant Officer Kyle Amrhein (hereinafter "Officer Amrhein," or collectively with other named officers as "Officer Defendants") is, and was at all times relevant hereto, an adult employed by the Baltimore County Police Department as a police officer, and at all times relevant hereto was acting in his individual capacity and/or his official capacity as a Baltimore County police officer. At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department. As such, he was acting under the authority and color of state law at all times relevant hereto.

8.      Defendant Officer William Halstead (hereinafter "Officer Halstead," or collectively with other named officers as "Officer Defendants") is, and was at all times relevant hereto, an adult employed by the Baltimore County Police Department as a police officer, and at all times relevant hereto was acting in his individual capacity and/or his official capacity as a Baltimore County police officer. At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department. As such, he was acting under the authority and color of state law at all times relevant hereto.

9.      Defendant Officer Priscilla Harshadavid (hereinafter "Officer Harshadavid," or collectively with other named officers as "Officer Defendants") is, and was at all times relevant hereto,

an adult employed by the Baltimore County Police Department as a police officer, and at all times relevant hereto was acting in his individual capacity and/or his official capacity as a Baltimore County police officer. At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department. As such, he was acting under the authority and color of state law at all times relevant hereto.

10.     Defendant Officer Erik Legge (hereinafter "Officer Legge," or collectively with other named officers as "Officer Defendants") is, and was at all times relevant hereto, an adult employed by the Baltimore County Police Department as a police officer, and at all times relevant hereto was acting in his individual capacity and/or his official capacity as a Baltimore County police officer. At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department. As such, he was acting under the authority and color of state law at all times relevant hereto.

11.     Defendant Officer David Lehnert (hereinafter "Officer Lehnert," or collectively with other named officers as "Officer Defendants") is, and was at all times relevant hereto, an adult employed by the Baltimore County Police Department as a police officer, and at all times relevant hereto was acting in his individual capacity and/or his official capacity as a Baltimore County police officer. At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department. As such, he was acting under the authority and color of state law at all times relevant hereto.

12.     Defendant Officer Paul Schulman (hereinafter "Officer Schulman," or collectively with other named officers as "Officer Defendants") is, and was at all times relevant hereto, an adult employed by the Baltimore County Police Department as a police officer, and at all times relevant hereto was acting in his individual capacity and/or his official capacity as a Baltimore County police officer. At all times relevant he was employed and engaged in an occupation with the Baltimore County

Police Department. As such, he was acting under the authority and color of state law at all times relevant hereto.

13.     Defendant Officer Rachael Steigen (hereinafter "Officer Steigen," or collectively with other named officers as "Officer Defendants") is, and was at all times relevant hereto, an adult employed by the Baltimore County Police Department as a police officer, and at all times relevant hereto was acting in his individual capacity and/or his official capacity as a Baltimore County police officer. At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department. As such, he was acting under the authority and color of state law at all times relevant hereto.

14.     Defendant Officer Evan Vicarini (hereinafter "Officer Vicarini," or collectively with other named officers as "Officer Defendants") is, and was at all times relevant hereto, an adult employed by the Baltimore County Police Department as a police officer, and at all times relevant hereto was acting in his individual capacity and/or his official capacity as a Baltimore County police officer. At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department. As such, he was acting under the authority and color of state law at all times relevant hereto.

15.     Defendant Officer Anthony Vitacco (hereinafter "Officer Vitacco," or collectively with other named officers as "Officer Defendants") is, and was at all times relevant hereto, an adult employed by the Baltimore County Police Department as a police officer, and at all times relevant hereto was acting in his individual capacity and/or his official capacity as a Baltimore County police officer. At all times relevant he was employed and engaged in an occupation with the Baltimore County Police Department. As such, he was acting under the authority and color of state law at all times relevant hereto.

## JURISDICTION AND VENUE

16.     The above and all other allegations herein are incorporated by reference as if fully set forth.

17.     This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution and asserts claims for relief 42 U.S. § 1983, as well as claims for relief under Article 24 of the Maryland Constitution, and Maryland State Law.

18.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343. This Court also has supplemental jurisdiction over the state law claims against the individual Defendants pursuant to 28 U.S.C. § 1367.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) inasmuch as Plaintiff's causes of action arose in the District of Maryland, and at all times relevant to this action all the Defendants were found in this District.

20.     Plaintiffs provided proper constructive notice of their claims under the Local Government Tort Claims Act, Section 5-301 *et seq.* of the Courts and Judicial Proceedings Article and are in full compliance with said Act. Plaintiffs have fully complied with all conditions precedent to filing suit.

21.     The Complaint was filed within three years of the cause of action.

## FACTS COMMON TO ALL COUNTS

22.     The above and all other allegations herein are incorporated by reference as if fully set forth.

23.     On or about January 25, 2020, at approximately 7:00 p.m., Plaintiffs and their family were dining at City View Bar and Grill located at 6700 Security Boulevard, Baltimore, Maryland 21207 to celebrate Plaintiff Shaneris Nalls' upcoming 18th birthday.

24.     Around 7:30 p.m. Plaintiff Shaneris Nalls and three female friends were seated in Plaintiff Shaneris Nalls' vehicle, which was parked in a parking lot, without keys in the ignition, next to other parked vehicles.

25.     As the women were seated in the vehicle, Officers Vicarini and Schulman drove by in their police cruiser.

26.     Without any reasonable, articulable suspicion, Defendants Officer Vicarini and Officer Schulman parked their vehicle at the end of the parking lot and approached Plaintiffs vehicle. Officer Vicarini would later tell another officer, "Yeah, we drove by and they gave us the [expletive] crim look," seemingly admitting that the Officers stopped the vehicle and the occupants based occupants' appearance alone.

27.     Though the windows were rolled up and other vehicles were in the vicinity, Officer Vicarini would later claim he could smell the "strong odor of marijuana emanating from inside the vehicle."

28.     Lacking any reasonable, articulable suspicion that the alleged marijuana smell was coming from Plaintiffs' vehicle or that Plaintiff and the other passengers were engaged in criminal activity, the Officers 'stopped' the vehicle.

29.     When the Defendant Officers approached the vehicle, the windows of the vehicle were rolled up. The Defendant Officers demanded that Plaintiff Shaneris Nalls roll down the window. Plaintiff Shaneris Nalls, a minor, placed the key in the ignition and turned the battery on so she could roll the driver's window down, as she reasonably believed she was not free to leave.[1] Upon rolling the window down, the Defendant Officers began questioning Plaintiff Shaneris Nalls.

---

[1] It is only at this point, when Plaintiff Shaneris Nalls rolled down her window, as she believed she was not free to leave, that the Officers would have reasonably been able to smell marijuana and discern that its origin was this particular vehicle. "Although the odor of marijuana may give a law enforcement officer probable cause to search a

30.     At or around this time, Plaintiff Dayaneris Dmeza and Nehemiah Lembert approached the Officers and the vehicles to determine what was occurring. The Plaintiffs informed the Officers that Plaintiff Dmeza is the mother of Plaintiff Shaneris Nalls.

31.     Officers Vicarini and Schulman questioned Plaintiff Shaneris Nalls as to whether she possessed any marijuana. Officer Vicarini told Plaintiff that if she handed over any marijuana that she was in possession of, she would be free to leave, without a citation. Plaintiff Shaneris Nalls admitted to being in possession of a rolled marijuana cigarette, commonly referred to as a 'joint,' which she handed over to the officers.

32.     Officer Vicarini stated he believed there to be more marijuana, but Plaintiff Shaneris Nalls indicated she already gave him the joint.

33.     Officers Vicarini and Schulman then instructed all the passengers and Plaintiff Shaneris Nalls out of the vehicle. When Plaintiff Shaneris Nalls exited the vehicle, Officers Vicarini and Schulman asked to see her license, but Plaintiff Shaneris Nalls informed them she was not currently in possession of it.

34.     At or around this time, the two minor passengers seated in the rear of the vehicle had not yet exited the vehicle. Plaintiff Dayaneris Dmeza approached and leaned into the passenger's front door to ask whether they were okay. The rear passengers then exited, and Plaintiff Dayaneris Dmeza stepped away from the car.

35.     Officer Schulman, Officer Vicarini, Plaintiff Dayaneris Dmeza, Plaintiff Shaneris Nalls, Plaintiff Nehemiah Lembert and the three other women then stood next to the passenger side of the vehicle as Officer Schulman repeatedly questioned Plaintiff Dayaneris Dmeza and

---

motor vehicle under the automobile exception to the warrant requirement (*Robinson v. State*, 451 Md. 94, 125, 152 A.3d 661 (2017)), the deputy detected the odor of marijuana in this case only because he had effectuated an illegal stop." *Eppes v. State*, No. 1041, 2022 Md. App. LEXIS 786, at *17 (App. Oct. 28, 2022). Therefore, while the Defendant Officers would eventually find marijuana, allegedly totaling 15 grams, within the center console of the vehicle, the Defendant Officers had no legal justification for searching the vehicle.

Plaintiff Shaneris Nalls about whether Plaintiff Shaneris Nalls had a valid identification card. All four of the vehicle's doors were open.

36.      During this time, additional officers arrived on scene, including Officers Lehnert, Legge, Harshadavid and Vitacco, as requested by Officer Vicarini.[2] Plaintiffs Shamdu Caleb Nalls, Shamdu Veraby Nalls, and Nehemiah Lembert[3] also arrived on scene to inquire as to what was occurring. During this time, Officer Schulman escalated the situation by unnecessarily raising his voice and Officer Vicarini instructed the backup officers to "hook 'em" if "they start to get out of hand."

37.      Plaintiffs Shamdu Caleb Nalls and Shamdu Veraby Nalls repeatedly asked what is going on and identified themselves as the family members of Plaintiffs Dayaneris Dmeza and Shaneris Nalls. Plaintiff Shamdu Veraby Nalls repeatedly stated, "Let's talk," in an effort to simply understand and deescalate the situation. Officer Shulman asked Plaintiff Shamdu Veraby Nalls to step aside to speak, which he obeyed.

38.      During this same time, Plaintiff Shaneris Nalls entered the still parked vehicle to sit in the front passenger seat of Plaintiffs' vehicle while waiting for the Officers. It was the middle of January, and Plaintiff Shaneris Nalls was without a jacket, so she entered the vehicle to keep warm. Plaintiff Dayaneris Dmeza approached Plaintiff Shaneris Nalls, at which point Officer Vicarini yelled to "Get out of the car," and "Back up!". Plaintiff Dayaneris Dmeza attempted to obey but, as she was doing so, Officer Vicarini unnecessarily, and without legal justification, grabbed Plaintiff Dayaneris Dmeza's hoodie in the chest area and violently shoved her into the side of the vehicle. This quickly escalated the already tense situation.

---

[2] In all, about 25 Baltimore County Police Officers arrived on scene.
[3] Though Nehemiah Lembert first arrived on scene with Plaintiff Dayaneris Dmeza, he left briefly to inform Plaintiffs Shamdu Caleb Nalls and Shamdu Veraby Nalls of what was occurring.

39.     Additional officers continued to arrive on scene as the following events occurred and were recorded by the body-worn cameras of each of the Officer Defendants.

40.     Plaintiff Shaneris Nalls attempted to step between Officer Vicarini and Plaintiff Dayaneris Dmeza, to stop Officer Vicarini's violent assault of Plaintiff Dayaneris Dmeza. When she attempted to do so, Officer Vicarini violently threw Plaintiff Shaneris Nalls to the ground. Officer Vicarini began to kneel on Plaintiff Shaneris Nalls, as she cried that she was not attempting to resist, and ultimately placed her under arrest, handcuffing Plaintiff Shaneris Nalls as she remained on the ground.

41.     As Officer Vicarini threw Plaintiff Shaneris Nalls to the ground, Officer Vitacco violently assaulted Plaintiff Dayaneris Dmeza by slamming her into a large metal fence, located behind the parked vehicle. As a natural reaction to seeing his wife[4] being attacked, Plaintiff Shamdu Veraby Nalls approached Officer Vitacco and his wife. As Plaintiff Shamdu Veraby Nalls attempted to nonviolently intervene in the beating of his wife, he was violently, and without warning, punched multiple times by Defendant Vicarini. Seconds later, Plaintiff Shamdu Veraby Nalls was attacked from behind by Officer Shulman and another Officer Defendant who violently slammed Plaintiff into the parked car and down onto the pavement.

42.     In a display of grossly excessive force, Plaintiff Shamdu Veraby Nalls would ultimately be beaten, kicked, and tased, by at least four Defendant Officers – including Officers Amrhein, Vitacco, Halstead, and Shulman – while his hands were behind his back and he was laid face down on the ground. One Officer Defendant violently kicked Plaintiff Shamdu Veraby Nalls in the head and face.

---

[4] Though Plaintiffs Dayaneris Dmeza and Shamdu Veraby Nalls were not legally married under Maryland Law, they considered themselves married religiously.

43.     This violent assault caused Plaintiff Shamdu Veraby Nalls to lose consciousness as he remained on the ground.

44.     After he regained consciousness, two or more Defendant Officers dragged Plaintiff Shamdu Veraby Nalls to a police cruiser. As they violently shoved Plaintiff Shamdu Veraby Nalls into the cruiser, one Defendant Officer, thought to be Officer Amrhein, tased Plaintiff.

45.     At the same time, Officer Vitacco violently threw Plaintiff Dayaneris Dmeza face first into the concrete sidewalk next to the fence. Immediately thereafter, Officer Harshadavid rushed over and placed her bodyweight on top of Plaintiff Dayaneris Dmeza before putting Plaintiff in handcuffs. Officer Vitacco violently pressed his knee on top of Plaintiff's head as her face pressed into the concrete.

46.     Seeing what was occurring, Plaintiff Nehemiah Lembert approached as he attempted to check the safety and wellbeing of Plaintiff Dayaneris Dmeza. He was violently grabbed by Officers Harshadavid, Steigen (who was then on scene by that time), and Halstead. Officer Legge then approached, and the four Defendant Officers violently forced him into the fence and then to ground.

47.     As Plaintiff Nehemiah Lembert is on the ground, with his hands behind his back and four Defendant Officers on top of him, Officer Halstead placed his hand around Plaintiff's neck and attempted to strangle Plaintiff. At the same time, two other Defendant Officers had placed their hands on Plaintiff's neck as well.

48.     Within seconds, and while Plaintiff frantically pleaded that his hands were behind his back and he was not resisting, Officer Steigen placed her forearm against his throat. Again, seemingly in an attempt to choke Plaintiff.

49.     Plaintiff Nehemiah Lembert was ultimately placed in handcuffs while one or more Defendant Officers placed their bodyweight onto his back as he laid face down on the sidewalk.

50.     Officer Steigen was one of the Officer Defendants that placed her bodyweight on Plaintiff Nehemiah Lembert. During this time, Plaintiff pleaded that he was not able to breath. It was not until Officer Harshadavid instructed Officer Steigen to let off, that some of her weight was taken off of Plaintiff.

51.     As he saw both of his parents being assaulted by Officer Defendants, Plaintiff Shamdu Caleb Nalls rushed past officers – with his hands in the air – to check on the safety of his mother.  He was instructed to back up, at which point Plaintiff backed up, with his hands still in the air. Nonetheless, Officer Amrhein, who was then on scene, and Officer Lehnert shoved Plaintiff further back as he cried about the wellbeing of his mother.

52.     In an attempt to get the Defendant Officers to let go, Plaintiff Shamdu Caleb Nalls spun in a circle. The Defendant Officers continued to grab him, causing Plaintiff to lose balance. In an attempt to brace his fall, Plaintiff put his hands outward, in an open palm. While doing so, Officer Lehnert grabbed Plaintiff, pulling the duo backward into a police car. Plaintiff Shamdu Caleb Nalls, fell back into Officer Lehnert with his hands in the air.

53.     Without just cause, Officer Amrhein deployed his taser, striking Plaintiff Shamdu Caleb Nalls in the groin area, causing him to fall face forward onto the pavement. Officer Amrhein continued to tase Plaintiff, even as he was on the ground.

54.     Officer Lehnert then placed handcuffs on Plaintiff who was attempting to plead that he cannot breathe.

55.     As Officer Lehnert allowed Plaintiff Shamdu Caleb Nalls to roll onto his side to catch a breath, the other Defendant Officers began their assault on his father, just feet away.

56.     In a reflex, Plaintiff Shamdu Caleb Nalls attempted to curl into a ball to avoid being struck by the Defendant Officers beating Plaintiff Shamdu Veraby Nalls. As he curled up, another Officer Defendant questioned Officer Lehnert as to whether Plaintiff Shamdu Caleb Nalls was handcuffed, which Officer Lehnert confirmed.

57.     Nonetheless, the Officer Defendant unlawfully yanked Plaintiff Shamdu Caleb Nalls by the neck, then attempted to press down on his head and neck while another Officer Defendant lifted him up from the ground. Eventually, the Defendant Officers stop.

58.     During these unlawful assaults, each Plaintiff feared for their own safety, along with the safety of the other Plaintiffs, their family members.

59.     Additionally, during these unlawful assaults, each Plaintiff sustained physical and mental injury.

60.     Once all Plaintiffs were in custody, they were transported to the Baltimore County Police Woodlawn Precinct where they were processed, charged, and booked.

61.     Defendant Officers later authored a statement of probable cause to support these false charges. The statement of probable cause contains numerous allegations which are directly refuted by the Officer Defendants' own body-worn camera footage.[5]

62.     Plaintiff Shaneris Nalls was falsely charged with possession of marijuana, over ten (10) grams. The charges against her were ultimately dismissed.

63.     Plaintiff Shaneris Nalls sustained multiple injuries, including bruising and abrasions to her face and body.

---

[5] These allegations include: (1) Plaintiffs Shamdu Caleb Nalls, Plaintiff Shamdu Veraby Nalls, and Plaintiff Nehemiah Lembert moved 'quickly towards the officers and even separate[d] to attempt to surround both officers;" (2) the three male Plaintiffs "refused or were unwilling to participate in the communication/de-escalation process;" and (3) Plaintiff Dayaneris Dmeza "grabs a hold of Officer Vicarini and tries to push him;" etc. The body-worn camera footage also captures the Defendant Officers conspiring to create this fabricated story, including when Officer Vitacco tells Officer Vicarini "That looks like she put her hands on you... that's what it started from," and when another officer covers up Officer Vitacco's body-worn camera to muffle their conversation.

64.     Plaintiff Dayaneris Dmeza was falsely charged with Fail to Obey Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3) and Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2). Plaintiff was maliciously prosecuted until the charges against her were placed on the stet docket on July 30, 2020.

65.     Plaintiff Dayaneris Dmeza sustained multiple injuries including bruising, abrasions and a concussion.

66.     Plaintiff Shamdu Caleb Nalls was falsely charged with Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), Second Degree Assault, in violation of Maryland Criminal Code §3-203, Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), Failure to Obey a Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3), Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2), Malicious Destruction of Property, Valued at Over $1,000, in violation of Maryland Criminal Code §6-301, and Obstructing and Hindering. Plaintiff was maliciously prosecuted until a nolle prosequi was entered for each charge.

67.     Plaintiff Shamdu Caleb Nalls sustained injury to his right knee, right shoulder, left shoulder and suffered from a concussion.

68.     Plaintiff Shamdu Veraby Nalls was falsely charged with two counts of Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), two counts of Second Degree Assault, in violation of Maryland Criminal Code §3-203, one count of Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), one count of Failure to Obey a Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3), one count of Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2), and one count of Obstructing and Hindering. Plaintiff was maliciously prosecuted until the charges were placed on the stet docket on January 8, 2021.

69.     Plaintiff Shamdu Veraby Nalls also sustained injury including but not limited to an orbital floor fracture and bruising and abrasions to his face and body.

70.     Plaintiff Nehemiah Lembert was falsely charged with a number of charges including Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), Second Degree Assault, in violation of Maryland Criminal Code §3-203, and Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b). Plaintiff was maliciously prosecuted until a nolle prosequi was entered for each charge.

71.     Plaintiff Nehemiah Lembert also sustained injury including, but not limited to, bruises, abrasions, and injury to both shoulders.

72.     On or about January 28, 2018, each Plaintiff presented to the Baltimore County Police Department's Internal Affairs Section to file formal complaints against the involved officers for their excessive use of force.

73.     While the specific outcome of the investigation is unknown at this time, on or about December 15, 2021, the Baltimore County Police Internal Affairs Section did write letters to the Plaintiffs noting that 'the officer was in violation of Departmental Rules and Regulations." *See* Exhibit 1.

74.     Each individual Officer Defendant was on scene at the time of the unlawful arrest and assault of each Plaintiff, and either participated or failed to intervene against the illegal activity of the other Officer Defendants. Each individual Officer Defendant participated in preparing the paperwork to initiate false criminal charges and continue the prosecution against Plaintiffs.

75.     As a result of the incident, Plaintiffs have suffered, and continue to suffer, significant mental and physical pain and anguish, other non-economic damages and pecuniary injuries.

76.     At all times relevant hereto, Defendant Officers alternatively acted with actual or implied malice, intentionally, grossly negligently and/or negligently.

77.     At all times relevant hereto, Defendant Officers acted under color and pretense of law, and under color of statutes, customs, and usages of the State of Maryland.

78.     At all times relevant hereto, Defendant Officers acted within the scope of their employment.

79.     At no time did the Plaintiffs cause or contribute to their injuries.

80.     Plaintiffs further allege that all of their injuries, losses and damages – past, present, and prospective – were caused solely by the actions of Defendants, as set forth above, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

**COUNT I**
**(42 U.S.C. § 1983 - Use of Excessive Force in violation of the 4th and 14th Amendments)**
<u>**Versus the Individual Defendants**</u>

81.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

82.     At all times relevant to this Complaint, Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco were acting under the color of state law as police officers employed by Defendant Baltimore County, Maryland.

83.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco were prohibited from using excessive force in their efforts to seize, detain, and/or search Plaintiffs.

84.     The actions of Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco as detailed herein constitute excessive and unlawful

force in gross violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983.

85.     At all times relevant hereto, Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco deliberately subjected Plaintiffs to the deprivation of their rights with actual or implied malice, using unreasonable and unnecessary force in the treatment of Plaintiffs. This treatment violated the Plaintiffs' rights to be free from excessive force as protected by the Fourth and Fourteenth Amendments to the United States Constitution.

86.     The force used by Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful force in the restraint and/or apprehension of Plaintiffs.

87.     As a direct and proximate result of Officer Defendants' unlawful and unconstitutional conduct as described herein, Plaintiffs sustained physical injuries and have suffered, and continue to suffer, pain and suffering, humiliation, embarrassment, and discomfort.

88.     Officer Defendants' actions as described herein, and his use of force were intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Plaintiffs' constitutionally protected rights, and as such Plaintiffs are entitled to punitive damages from Officer Defendants, individually.

WHEREFORE, the Plaintiffs demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs, and reasonable attorneys' fees, and punitive damages and such further relief as the nature of the case requires.

## COUNT II
### (42 U.S.C. § 1983 – False Arrest and False Imprisonment in violation of the 4th and 14th Amendments)
### <u>Versus the Individual Defendants</u>

89.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

90.     Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco at all relevant times hereto, acted under color of State law in unlawfully seizing and arresting the Plaintiffs. Defendants deprived Plaintiffs of their rights under the Fourth Amendment of the United States Constitution, namely freedom from unreasonable search and seizure and arrest without probable cause.

91.     At all times relevant hereto, Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco deliberately subjected the Plaintiffs to the deprivation of their rights by seizing the Plaintiffs without proper reasonable suspicion or probable cause to do so, thereby injuring the Plaintiffs and depriving them of their liberty. This treatment violated Plaintiffs' right to be free form unreasonable search and seizure and arrest without probable cause as protected by the Fourth Amendment to the United States Constitution.

92.     Plaintiffs were falsely arrested and imprisoned in that all were arrested without probable cause or a warrant, placed into police cruisers, taken to the precinct, and charged with various false charges.

93.     There was no reasonable suspicion to support the initial stop of Plaintiff Shaneris Nalls, no reasonable suspicion to support the intended search of Plaintiff's vehicle, and no lawful grounds for the resulting assaults of each Plaintiff. Nevertheless, each of the Plaintiffs were handcuffed, arrested, and charged with at least one criminal charge.

94.     Plaintiffs sustained damages as a direct and proximate result of the unlawful search, seizure, false arrest, and false imprisonment, as well as consciously experienced pain and suffering, humiliation, and embarrassment.

WHEREFORE, the Plaintiffs demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs, and reasonable attorneys' fees, and punitive damages and such further relief as the nature of the case requires.

### COUNT III
### (42 U.S.C. § 1983 – Malicious Prosecution in violation of the 4th and 14th Amendments)
### Versus the Individual Defendants

95.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

96.     Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco initiated and continued criminal proceedings against Plaintiffs without proper justification.

97.     The Defendant Officers knew that Plaintiff Shamdu Caleb Nalls did not commit Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), Second Degree Assault, in violation of Maryland Criminal Code §3-203, Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), Failure to Obey a Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3), Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2), Malicious Destruction of Property, Valued at Over $1,000, in violation of Maryland Criminal Code §6-301, or Obstructing and Hindering.

98.     The Defendant Officers knew that Plaintiff Dayaneris Dmeza did not commit Failure to Obey Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3) or Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2).

99.     The Defendant Officers knew that they did have proper legal grounds to charge Plaintiff Shaneris Nalls with possession of marijuana. Further, upon information and belief, the amount of marijuana possessed was not enough to violate the relevant statute.

100.     The Defendant Officers knew that Plaintiff Shamdu Veraby Nalls did not commit two counts of Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), two counts of Second Degree Assault, in violation of Maryland Criminal Code §3-203, one count of Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), one count of Failure to Obey a Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3), one count of Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2), or one count of Obstructing and Hindering.

101.     The Defendant Officers knew that Plaintiff Nehemiah Lembert did not commit Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), Second Degree Assault, in violation of Maryland Criminal Code §3-203, or Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), or any other crime for which he was charged.

102.     Plaintiffs Shamdu Caleb Nalls, Shaneris Nalls, Shamdu Veraby Nalls, and Nehemiah Lembert attempted to protect Plaintiff Dayaneris Dmeza from Officer Vicarini's assault. At no time did any Plaintiff assault or intentionally cause bodily harm to any of the officers. At no time did any Plaintiff interfere with or resist a legal arrest.

103.     It was not lawful for the Defendant Officers to arrest the Plaintiffs without probable cause or legal justification.

104.    The charges against each of the Plaintiffs were either dismissed, placed on the stet docket, or entered as *nolle prosequi*.

105.    In violation of the 4th and 14th Amendments, there was no probable cause for the Plaintiffs' arrets, detention, or the criminal cases against them as stated otherwise herein.

106.    The prosecution of the Plaintiffs in the criminal cases was undertaken for a purpose other than bringing the Plaintiffs to justice – specifically, to cover for the Defendants' misconduct in using excessive force and in failing to properly investigate.

107.    The Defendant Officers caused the criminal prosecution of the Plaintiffs by falsely asserting that they committed various crimes the Defendant Officers knew the Plaintiffs did not commit.

108.    The Officer Defendants' actions constituted malicious prosecution and violated the 4th and 14th Amendments.

109.    The aforesaid acts of the Defendant Officers were undertaken deliberately and with actual malice.

110.    As a direct and proximate result of the aforesaid conduct, actions and inactions of the Defendants and that stated elsewhere herein, the Plaintiffs were caused to suffer and continues to suffer temporary physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending herself from the criminal charges filed without probable cause, all to the great detriment of the Plaintiffs.

111.    All of the Plaintiffs' injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the Defendants, as set forth herein,

without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

**COUNT IV**
*(Monell* **Claim - Use of Excessive Force in violation of the 4th and 14th Amendments)**
<u>**Versus Baltimore County, Maryland**</u>

112.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

113.    Defendant Baltimore County failed to adequately train, supervise, and discipline its officers against the use of excessive force and against arrest and imprisonment without probable cause. The failure to properly train, supervise, and discipline officers demonstrates a gross disregard for the constitutional rights of the public and the Plaintiffs, and was a proximate cause of the injuries to Plaintiffs.

114.    Baltimore County has also instituted and maintained formal and informal customs, policies, and practices that foster, promote and encourage officers to use excessive force, to arrest without probable cause, and otherwise violate citizens' constitutional rights.

115.    Arrest without probable cause and the use of excessive force occurs so frequently that it has become accepted manner by the Defendant Officers and other employees of Baltimore County. This is a result of Baltimore County's failure to establish effective procedures, rules, orders, guidelines and practices to ensure that excessive force will not be used and to ensure that allegations of excessive force will be thoroughly investigated and appropriately punished when found to have occurred. As a result of this failure, there has been a regular pattern and practice

of excessive force, failure to provide adequate medical care, cover-up, and failure to investigate. This pattern and practice has been manifested in other prior incidents involving county officers.

116.    The violation of citizens' constitutional rights to due process and equal protection of the laws occurs so frequently at the hands of the Defendant County and its employees and is a result of the County's failure to properly train its employees and to establish effective procedures, rules, orders, guidelines and practices to ensure that such violations will not be used and to ensure that allegations of constitutional violations be thoroughly investigated and appropriately punished when found to have occurred.

117.    Baltimore County has failed to effectively instruct officers that they have a duty to prevent and report excessive force when it occurs.

118.    Baltimore County lacks an effective internal affairs procedure and has no meaningful system to control and monitor the recurrence of excessive force by officers who have a pattern or history of such behavior.

      a. On or about December 19, 2015, Zachary Blumstein became involved in a verbal altercation outside of the Green Turtle Restaurant in Towson, MD. A man who didn't identify himself as a police officer grabbed Mr. Blumstein by the arm and pepper sprayed him in the face.

      b. Two other officers held Mr. Blumstein down and one of the officers punched him in the face at least once with a closed first.

      c. On or about August 1, 2016, Baltimore County Police attempted to serve a bench warrant on Korryn Gaines. Ms. Gaines had a shotgun in the home. Six officers gave statements saying that they were not in Ms. Gaines' line of fire and never felt threatened. She was shot by a Baltimore County officer and her son suffered minor physical injuries.

d. On or about March 15, 2019, civilian cell phone video shows Officer Becketts assisting in the arrest of a young Black male with at least three other officers. As the officers are attempting to place the man under arrest, Officer Becketts can be seen punching the man in the head area at least once and kicking him in the head at least once before another officer pushes him away and tells him to "Back up!"

e. On or about November 26, 2019 Baltimore County Officers received a call from a mother who was concerned about her son, Eric Sopp. He was experiencing a mental health crisis and had left the home after drinking and was suicidal. Officers conducted a traffic stop on the unarmed man and ultimately, he was fatally shot on the side of I-83.

f. On or about January 29, 2020, Baltimore County officers were dispatched to residential location following a report of property damage and a possible break-in. The responding officer, Cpl. Brennan's conversation with the woman could be described as antagonistic and the woman ceased all communication with the officer. The officer followed the woman to her grandmother's house to arrest her for disorderly conduct. He then deployed his mace and taser in to the home before saying "You are so f*cked up now! Jesus f*cking Christ!" Officer Schmidt then runs up and immediately tackles the 76-year old grandmother to the ground.

119. Baltimore County has failed to keep accurate records as to the number of false arrests by members of its police force. This policy encourages arrests without probable cause and inhibits Baltimore County from critically evaluating the need for a change in training.

120. The policies and customs of Baltimore County, as set forth herein, demonstrate a gross disregard for the constitutional rights of the public and the Plaintiffs. At the time of the injury to the Plaintiffs, the Defendants were operating under unconstitutional customs, policies,

and procedures. These customs, policies, and procedures were a proximate cause of the injuries to Plaintiffs.

121.    Moreover, Defendants failed to properly train, prosecute, supervise, and discipline officers, including, but not limited to, all of the named Defendants, in the proper constitutional use of force as required by the United States Constitution and the Maryland Declaration of Rights. The failure to properly train, prosecute, supervise, and discipline its officers demonstrated a gross disregard for the constitutional rights of the public and the Plaintiffs, and was a proximate cause of the injuries to the Plaintiffs.

122.    In addition, Defendant caused its officers and employees to believe that their use of excessive force would not be aggressively, honestly, and properly investigated.

123.    As a result, the individual Defendants have been caused and encouraged to believe that excessive force and illegal force could be used, and that it would be permitted without reproach.

124.    Defendant should have foreseen that such a policy would promote the use of illegal, unconstitutional, and excessive force, where such force is unreasonable.

125.    The execution of the unconstitutional policies or customs of Defendant County inflicted injury upon the Plaintiffs.

126.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendant County and that stated elsewhere herein, Plaintiffs were caused to suffer and continue to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of

Plaintiffs.

127.    The Plaintiffs further allege that all of their injuries, losses and damages – past, present and prospective – were caused solely by the actions of the Defendant County, as set forth above, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### COUNT V
### (Maryland Declaration of Rights – Article 24 & 26 Excessive Force)
### <u>Versus the Individual Defendants</u>

128.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

129.    The individual Defendants used excessive force against both Plaintiffs and in doing so, violated Plaintiffs' rights as protected under Articles 24 & 26 of the Maryland Declaration of Rights, specifically, Plaintiffs' due process rights and right to be free from excessive force.

130.    No force was authorized by law.

131.    The force used by the individual Defendants was unnecessary and objectively unreasonable.

132.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiffs were caused to suffer and continue to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation,

embarrassment, loss of respect, shame, loss of enjoyment of life, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### COUNT VI
### (Maryland Declaration of Rights – Article 24 & 26 Malicious Prosecution)
### <u>Versus the Individual Defendants</u>

133.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

134.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

135.    Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco initiated and continued criminal proceedings against Plaintiffs without proper justification.

136.    The Defendant Officers knew that Plaintiff Shamdu Caleb Nalls did not commit Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), Second Degree Assault, in violation of Maryland Criminal Code §3-203, Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), Failure to Obey a Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3), Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2), Malicious Destruction of Property, Valued at Over $1,000, in violation of Maryland Criminal Code §6-301, or Obstructing and Hindering.

137. The Defendant Officers knew that Plaintiff Dayaneris Dmeza did not commit Fail to Obey Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3) or Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2).

138. The Defendant Officers knew that they did have proper legal grounds to charge Plaintiff Shaneris Nalls with possession of marijuana. Further, upon information and belief, the amount of marijuana possessed was not enough to violate the relevant statute.

139. The Defendant Officers knew that Plaintiff Shamdu Veraby Nalls did not commit two counts of Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), two counts of Second Degree Assault, in violation of Maryland Criminal Code §3-203, one count of Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), one count of Failure to Obey a Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3), one count of Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2), or one count of Obstructing and Hindering.

140. The Defendant Officers knew that Plaintiff Nehemiah Lembert did not commit Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), Second Degree Assault, in violation of Maryland Criminal Code §3-203, or Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), or any other crime for which he was charged.

141. Plaintiffs Shamdu Caleb Nalls, Shaneris Nalls, Shamdu Veraby Nalls, and Nehemiah Lembert attempted to protect Plaintiff Dayaneris Dmeza from Officer Vicarini's assault. At no time did any Plaintiff assault or intentionally cause bodily harm to any of the officers. At no time did any Plaintiff interfere with or resist a legal arrest.

142. It was not lawful for the Defendant Officers to arrest the Plaintiffs without probable cause or legal justification.

143.    The charges against each of the Plaintiffs were either dismissed, placed on the stet docket, or entered as *nolle prosequi*.

144.    In violation of the 4th and 14th Amendments, there was no probable cause for the Plaintiffs' arrets, detention, or the criminal cases against them as stated otherwise herein.

145.    The prosecution of the Plaintiffs in the criminal cases was undertaken for a purpose other than bringing the Plaintiffs to justice – specifically, to cover for the Defendants' misconduct in using excessive force and in failing to properly investigate.

146.    The Defendant Officers caused the criminal prosecution of the Plaintiffs by falsely asserting that they committed various crimes the Defendant Officers knew the Plaintiffs did not commit.

147.    The Officer Defendants' actions constituted malicious prosecution and violated the 4th and 14th Amendments.

148.    The aforesaid acts of the Defendant Officers were undertaken deliberately and with actual malice.

149.    As a direct and proximate result of the aforesaid conduct, actions and inactions of the Defendants and that stated elsewhere herein, the Plaintiffs were caused to suffer and continues to suffer temporary physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending herself from the criminal charges filed without probable cause, all to the great detriment of the Plaintiffs.

150.    All of the Plaintiffs' injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the Defendants, as set forth herein,

without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

## COUNT VII
### (Maryland Declaration of Rights – Article 24 & 26 False Arrest & False Imprisonment)
### Versus the Individual Defendants

151.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

152.    Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco at all relevant times hereto, acted under color of State law in unlawfully seizing and arresting the Plaintiffs. Defendants deprived Plaintiffs of their rights under the Fourth Amendment of the United States Constitution, namely freedom from unreasonable search and seizure and arrest without probable cause.

153.    At all times relevant hereto, Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco deliberately subjected the Plaintiffs to the deprivation of their rights by seizing the Plaintiffs without proper reasonable suspicion or probable cause to do so, thereby injuring the Plaintiffs and depriving them of their liberty. This treatment violated Plaintiffs' right to be free form unreasonable search and seizure and arrest without probable cause as protected by the Fourth Amendment to the United States Constitution.

154.    Plaintiffs were falsely arrested and imprisoned in that all were arrested without probable cause or a warrant, placed into police cruisers, taken to the precinct, and charged with various false charges.

155.     There was no reasonable suspicion to support the initial stop of Plaintiff Shaneris Nalls, no reasonable suspicion to support the intended search of Plaintiff's vehicle, and no lawful grounds for the resulting assaults of each Plaintiff. Nevertheless, each of the Plaintiffs were handcuffed, arrested, and charged with at least one criminal charge.

156.     Plaintiffs sustained damages as a direct and proximate result of the unlawful search, seizure, false arrest, and false imprisonment, as well as consciously experienced pain and suffering, humiliation, and embarrassment.

WHEREFORE, the Plaintiffs demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs, and reasonable attorneys' fees, and punitive damages and such further relief as the nature of the case requires.

## COUNT VIII
### (Maryland Common Law *Longtin* Claim – Articles 24 & 26 Excessive Force)
### <u>Versus Baltimore County, Maryland</u>

157.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

158.     Defendant Baltimore County failed to adequately train, supervise, and discipline its officers against the use of excessive force and against arrest and imprisonment without probable cause. The failure to properly train, supervise, and discipline officers demonstrates a gross disregard for the constitutional rights of the public and the Plaintiffs, and was a proximate cause of the injuries to Plaintiffs.

159.     Baltimore County has also instituted and maintained formal and informal customs, policies, and practices that foster, promote and encourage officers to use excessive force, to arrest without probable cause, and otherwise violate citizens' constitutional rights.

160.     Arrest without probable cause and the use of excessive force occurs so frequently

that it has become accepted manner by the Defendant Officers and other employees of Baltimore County. This is a result of Baltimore County's failure to establish effective procedures, rules, orders, guidelines and practices to ensure that excessive force will not be used and to ensure that allegations of excessive force will be thoroughly investigated and appropriately punished when found to have occurred. As a result of this failure, there has been a regular pattern and practice of excessive force, failure to provide adequate medical care, cover-up, and failure to investigate. This pattern and practice has been manifested in other prior incidents involving county officers.

161.    The violation of citizen's constitutional rights to due process and equal protection of the laws occurs so frequently at the hands of the Defendant County and its employees and is a result of the County's failure to properly train its employees and to establish effective procedures, rules, orders, guidelines and practices to ensure that such violations will not be used and to ensure that allegations of constitutional violations be thoroughly investigated and appropriately punished when found to have occurred.

162.    Baltimore County has failed to effectively instruct officers that they have a duty to prevent and report excessive force when it occurs.

163.    Baltimore County lacks an effective internal affairs procedure and has no meaningful system to control and monitor the recurrence of excessive force by officers who have a pattern or history of such behavior.

  a.  On or about December 19, 2015, Zachary Blumstein became involved in a verbal altercation outside of the Green Turtle Restaurant in Towson, MD. A man who didn't identify himself as a police officer grabbed Mr. Blumstein by the arm and pepper sprayed him in the face.

  b.  Two other officers held Mr. Blumstein down and one of the officers punched him in the face at least once with a closed first.

c.  On or about August 1, 2016, Baltimore County Police attempted to serve a bench warrant on Korryn Gaines. Ms. Gaines had a shotgun in the home. Six officers gave statements saying that they were not in Ms. Gaines' line of fire and never felt threatened. She was shot by a Baltimore County officer and her son suffered minor physical injuries.

d.  On or about March 15, 2019, civilian cell phone video shows Officer Becketts assisting in the arrest of a young Black male with at least three other officers. As the officers are attempting to place the man under arrest, Officer Becketts can be seen punching the man in the head area at least once and kicking him in the head at least once before another officer pushes him away and tells him to "Back up!"

e.  On or about November 26, 2019 Baltimore County Officers received a call from a mother who was concerned about her son, Eric Sopp. He was experiencing a mental health crisis and had left the home after drinking and was suicidal. Officers conducted a traffic stop on the unarmed man and ultimately, he was fatally shot on the side of I-83.

f.  On or about January 29, 2020, Baltimore County officers were dispatched to residential location following a report of property damage and a possible break-in. The responding officer, Cpl. Brennan's conversation with the woman could be described as antagonistic and the woman ceased all communication with the officer. The officer followed the woman to her grandmother's house to arrest her for disorderly conduct. He then deployed his mace and taser in to the home before saying "You are so f*cked up now! Jesus f*cking Christ!" Officer Schmidt then runs up and immediately tackles the 76-year old grandmother to the ground.

164.  Baltimore County has failed to keep accurate records as to the number of false

arrests by members of its police force. This policy encourages arrests without probable cause and inhibits Baltimore County from critically evaluating the need for a change in training.

165.     The policies and customs of Baltimore County, as set forth herein, demonstrate a gross disregard for the constitutional rights of the public and the Plaintiffs. At the time of the injury to the Plaintiffs, the Defendants were operating under unconstitutional customs, policies, and procedures. These customs, policies, and procedures were a proximate cause of the injuries to Plaintiffs.

166.     Moreover, Defendants failed to properly train, prosecute, supervise, and discipline officers, including, but not limited to, all of the named Defendants, in the proper constitutional use of force as required by the United States Constitution and the Maryland Declaration of Rights. The failure to properly train, prosecute, supervise, and discipline its officers demonstrated a gross disregard for the constitutional rights of the public and the Plaintiffs, and was a proximate cause of the injuries to the Plaintiffs.

167.     In addition, Defendant caused its officers and employees to believe that their use of excessive force would not be aggressively, honestly, and properly investigated.

168.     As a result, the individual Defendants have been caused and encouraged to believe that excessive force and illegal force could be used, and that it would be permitted without reproach.

169.     Defendant should have foreseen that such a policy would promote the use of illegal, unconstitutional, and excessive force, where such force is unreasonable.

170.     The execution of the unconstitutional policies or customs of Defendant County inflicted injury upon the Plaintiffs.

171.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendant County and that stated elsewhere herein, Plaintiffs were caused to suffer and continue

to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiffs.

172.    The Plaintiffs further allege that all of their injuries, losses and damages – past, present and prospective – were caused solely by the actions of the Defendant County, as set forth above, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

### COUNT IX
### (Maryland Common Law Battery)
### Versus the Individual Defendants

173.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

174.    In physically assaulting the Plaintiffs, as described above, the Defendant Officers touched the Plaintiffs in unwelcome ways.

175.    The unwelcome touching of the Plaintiffs was not privileged or otherwise warranted under the circumstances

176.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendant Officers and that stated elsewhere herein, Plaintiffs were caused to suffer and continue

to suffer physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment or life, an inability to perform and enjoy their normal and usual activities, and economic damages including, but not limited to, past medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiffs.

177.    All of the Plaintiffs' injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the Defendants, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

**COUNT X**
**(Maryland Common Law False Arrest & Imprisonment)**
**<u>Versus the Individual Defendants</u>**

178.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

179.    Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco intentionally and unlawfully detained the Plaintiffs, thereby depriving them of their freedom of movement.

180.    Plaintiffs were falsely arrested and imprisoned in that all were arrested without probable cause or a warrant, placed into police cruisers, taken to the precinct, and charged with various false charges.

181.    Defendant Officers arrested Plaintiffs without legal cause or justification. There was no reasonable suspicion to support the initial stop of Plaintiff Shaneris Nalls, no reasonable suspicion to support the intended search of Plaintiff's vehicle, and no lawful grounds for the resulting assaults of each Plaintiff. Nevertheless, each of the Plaintiffs were handcuffed, arrested, and charged with at least one criminal charge.

182.    Plaintiffs did not consent to being detained by the officers.

183.    Defendants clearly intended to (and did) unlawfully take Plaintiffs into custody and subject them to the Defendants' control.

184.    The individual defendants did not have the legal authority to arrest Plaintiffs under the circumstances that existed at the time.

185.    The individual Defendants further restrained the liberty of Plaintiffs by acts including, but not limited to, physically taking hold of their persons, applying handcuffs to them, and arresting and holding them in custody overnight.

186.    Plaintiffs were conscious of and harmed by the unlawful restriction of their liberty. Plaintiffs knew that the officers were taking them to jail for reasons that were unjustified.

180. Plaintiffs were physically harmed when Defendant Officers physically assaulted each family member, as described above.

181. The confinement of Plaintiffs by the Officer Defendants was complete because there was no way to avoid their imprisonment.

182. The Defendant Officers acted with the specific intent to deprive Plaintiffs of their physical freedom and liberty and to imprison them.

183. As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiffs were caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and

suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiffs.

WHEREFORE, the Plaintiffs demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs, and reasonable attorneys' fees, and punitive damages and such further relief as the nature of the case requires.

## COUNT XI
### (Maryland Common Law Malicious Prosecution)
### <u>Versus the Individual Defendants</u>

187.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

188.    Defendants Amrhein, Halstead, Harshadavid, Legge, Lehnert, Schulman, Steigen, Vicarini, and Vitacco initiated and continued criminal proceedings against Plaintiffs without proper justification.

189.    The Defendant Officers knew that Plaintiff Shamdu Caleb Nalls did not commit Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), Second Degree Assault, in violation of Maryland Criminal Code §3-203, Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), Failure to Obey a Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3), Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2), Malicious Destruction of Property, Valued at Over $1,000, in violation of Maryland Criminal Code §6-301, or Obstructing and Hindering.

190.     The Defendant Officers knew that Plaintiff Dayaneris Dmeza did not commit Fail to Obey Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3) or Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2).

191.     The Defendant Officers knew that they did have proper legal grounds to charge Plaintiff Shaneris Nalls with possession of marijuana. Further, upon information and belief, the amount of marijuana possessed was not enough to violate the relevant statute.

192.     The Defendant Officers knew that Plaintiff Shamdu Veraby Nalls did not commit two counts of Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), two counts of Second Degree Assault, in violation of Maryland Criminal Code §3-203, one count of Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), one count of Failure to Obey a Reasonable and Lawful Order, in violation of Maryland Criminal Code §10-201(c)(3), one count of Disorderly Conduct, in violation of Maryland Criminal Code §10-201(c)(2), or one count of Obstructing and Hindering.

193.     The Defendant Officers knew that Plaintiff Nehemiah Lembert did not commit Second Degree Assault of a Law Enforcement Officer, in violation of Maryland Criminal Code §3-202(c)(2), Second Degree Assault, in violation of Maryland Criminal Code §3-203, or Resisting or Interfering with an Arrest, in violation of Maryland Criminal Code §9-408(b), or any other crime for which he was charged.

194.     Plaintiffs Shamdu Caleb Nalls, Shaneris Nalls, Shamdu Veraby Nalls, and Nehemiah Lembert attempted to protect Plaintiff Dayaneris Dmeza from Officer Vicarini's assault. At no time did any Plaintiff assault or intentionally cause bodily harm to any of the officers. At no time did any Plaintiff interfere with or resist a legal arrest.

195.     It was not lawful for the Defendant Officers to arrest the Plaintiffs without probable cause or legal justification.

196.   The charges against each of the Plaintiffs were either dismissed, placed on the stet docket, or entered as *nolle prosequi.*

197.   In violation of the 4th and 14th Amendments, there was no probable cause for the Plaintiffs' arrets, detention, or the criminal cases against them as stated otherwise herein.

198.   The prosecution of the Plaintiffs in the criminal cases was undertaken for a purpose other than bringing the Plaintiffs to justice – specifically, to cover for the Defendants' misconduct in using excessive force and in failing to properly investigate.

199.   The Defendant Officers caused the criminal prosecution of the Plaintiffs by falsely asserting that they committed various crimes the Defendant Officers knew the Plaintiffs did not commit.

200.   The Officer Defendants' actions constituted malicious prosecution and violated the 4th and 14th Amendments.

201.   The aforesaid acts of the Defendant Officers were undertaken deliberately and with actual malice.

202.   As a direct and proximate result of the aforesaid conduct, actions and inactions of the Defendants and that stated elsewhere herein, the Plaintiffs were caused to suffer and continues to suffer temporary physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees defending herself from the criminal charges filed without probable cause, all to the great detriment of the Plaintiffs.

203.   All of the Plaintiffs' injuries, losses and damages – past, present and prospective – were caused solely by the conduct, actions and inactions of the Defendants, as set forth herein,

without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

## COUNT XII
### (Maryland Common Law Gross Negligence)
### Versus the Individual Defendants

204.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

205.    Defendant Officers acted recklessly with gross negligence and/or malice when they injured the Plaintiffs while in their custody and control, thereby causing them to suffer physical injury.

206.    Defendant Officers intentionally failed to carry out their duties as required by their own internal procedures when they forcibly restrained Plaintiffs without justification.

207.    The actions of the Defendant Officers affected the lives of the Plaintiffs. Each of the Plaintiffs feared not only for their own lives, but for the wellbeing of their family members as five members of the same family were brutally assaulted of the Defendant Officers at the same time.

208.    Defendant Officers knew or should have known that Plaintiffs were not subject to any use of force, and that any force was excessive given the lack of reasonable suspicion to stop the vehicle and the lack of probable cause for an arrest of any of the Plaintiffs.

209.    Defendant Officers acted with gross negligence and/or malice by intentionally and knowingly assaulting and battering the Plaintiffs without cause or legal justification.

210.     Defendant Officers were acting with wanton and willful disregard of Plaintiffs' rights as if such rights did not exist when they purposefully assaulted the Plaintiffs in a manner that was unreasonable, excessive, and unnecessary.

211.     Defendant Officers demonstrated ill-will and an evil and wrongful motive against Plaintiffs when they violently assaulted and placed Plaintiffs under arrest without probable cause or other legal justification.

212.     By taking part in the attack against the Plaintiffs, Defendant Officers demonstrated a purpose to deliberately and willfully injure Plaintiffs.

213.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and as stated elsewhere herein, Plaintiffs were caused to suffer and continues to suffer temporary physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past medical bills and expenses, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

## COUNT XIII
### (Maryland Common Law Negligence)
### Versus All Defendants

214.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

215.    Defendants owed Plaintiffs the various constitutional and common law duties outlined elsewhere herein, as well as the duties of good care and safe keeping.

216.    Defendants breached their duties to the Plaintiffs by committing the misconduct outlined above.

217.    Defendants' breaches of their duties directly and proximately caused the Plaintiffs' injuries and damages outlined above.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but greater than the relevant jurisdictional amount plus interest, costs and attorneys' fees, and punitive damages, and such other and further relief as the nature of the case requires.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues of fact in this case.

Respectfully Submitted,

Hannah M. Ernstberger, Esquire
Saller, Lord, Ernstberger & Insley
12 S. Calvert Street, 2nd Floor
Baltimore, MD 21202
(410) 783-7945